BANCOHIO NATIONAL BANK, APPELLANT, *v.* SCHIESSWOHL ET AL.; HENRETTA & ASSOCIATES ET AL., APPELLEES.

(No. 12377—Decided November 19, 1986.)

*Robert F. Linton* and *Lawrence R. Bach,* for appellant.

*Robert L. Summers, William S. Fein* and Kenneth Gibson, for appellees.

MAHONEY, P.J. BancOhio National Bank ("BancOhio") appeals from an order directing a verdict for Henretta & Associates, Terrence Henretta, and G. Richard Harvey (collectively "the Accountants"). We affirm.

Facts

Robert C. Schiesswohl, not a party to this appeal, was the president and sole stockholder of Northern Ohio Tractor, Inc. ("Northern"). In 1972, BancOhio, then known as Akron National Bank, began entering into various financing agreements with Northern. BancOhio continued to transact business with Northern until Northern eventually filed for bankruptcy.

In 1979, BancOhio began requiring that Northern submit financial statements audited by independent certified public accountants. Schiesswohl provided statements prepared by the Accountants for fiscal years 1979 and 1980. BancOhio relied upon these financial statements in deciding to provide the financing for Northern to undertake a major expansion in 1981.

Northern eventually went into bankruptcy. BancOhio brought this action against Schiesswohl and the Accountants. As to the Accountants, BancOhio alleged that the financial statements for Northern were negligently prepared. On September 11, 1985, the matter proceeded to a jury trial.

At the close of BancOhio's case in chief, all defendants moved for directed verdicts. The primary basis for the Accountants' motion was that BancOhio failed to produce any evidence tending to show that the Accountants knew that the financial statements would be submitted to BancOhio after they were prepared.

BancOhio responded by moving to reopen its case in chief in order to call defendant Terrence Henretta to testify. BancOhio contended that Henretta's testimony would establish that the Accountants understood that the financial statements would be submitted to BancOhio.

The trial court initially denied BancOhio's motion to reopen its case, denied Schiesswohl's motion for a directed verdict, and directed a verdict for the Accountants.

Subsequently, the trial court permitted BancOhio to call Henretta and proffer his testimony to the court. However, the trial court held that Henretta's testimony failed to establish a prima facie case against the Accountants and the directed verdict stood.

### Assignment of Error

"The trial court erred in granting a directed verdict in favor of the defendants, Henretta & Associates, Terrence Henretta, and G. Richard Harvey."

In order to sustain a Civ. R. 50(A) motion for a directed verdict, there must be an absence of any substantial, competent evidence to support the party against whom the motion is made. *Strother* v. *Hutchinson* (1981), 67 Ohio St. 2d 282, 284-285, 21 O.O. 3d 177, 179, 423 N.E. 2d 467, 469. Neither the weight of the evidence nor the credibility of the witnesses is considered. *Id.*

The Ohio Supreme Court has held that accountants may be liable to third parties for professional negligence only when the third party is "a member of a limited class whose reliance on the accountant's representation is specifically foreseen." *Haddon View Investment Co.* v. *Coopers & Lybrand* (1982), 70 Ohio St. 2d 154, 157, 24 O.O. 3d 268, 270, 436 N.E. 2d 212, 215. In so holding, the court relied upon *White* v. *Guarente* (1977), 43 N.Y. 2d 356, 401 N.Y. Supp. 2d 474, 372 N.E. 2d 315 and 3 Restatement of the Law 2d, Torts (1977) 126-127, Section 552. The Restatement provides in pertinent part:

"(1) One who * * * supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

"(2) * * * [T]he liability stated in Subsection (1) is limited to loss suffered

"(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

"(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction." *Id.*

BancOhio contends that the trial court misinterpreted Ohio law in this area. Even assuming, *arguendo,* that BancOhio is correct, the Accountants

were nevertheless entitled to a directed verdict.

The trial court appears to have relied upon a recent New York case, *Credit Alliance Corp.* v. *Arthur Anderson & Co.* (1985), 65 N.Y. 2d 536, 493 N.Y. Supp. 2d 435, 483 N.E. 2d 110. In order for accountants to be liable to third parties under the *Credit Alliance* rule, "* * * (1) the accountants must have been aware that the financial reports were to be used for a particular purpose or purposes; (2) in the furtherance of which a known party or parties was intended to rely; and (3) there must have been some conduct on the part of the accountants linking them to that party or parties, which evinces the accountants' understanding of that party or parties' reliance. * * *" *Id.* at 551, 493 N.Y. Supp. 2d at 443, 483 N.E. 2d at 118.

Since the Restatement contains no requirement for conduct on the part of accountants linking them to the third party, the court in *Credit Alliance* specifically rejected the Restatement position in favor of this more restrictive standard. *Id.* at 553, 493 N.Y. Supp. 2d at 444, 483 N.E. 2d at 119, fn. 11.

While we do not agree that the *Credit Alliance* rule is applicable in Ohio, we do agree that BancOhio failed to establish a prima facie case against the Accountants. An appellate court will not reverse a correct judgment merely because a lower court assigned erroneous reasons as the basis of the judgment. See *Agriculture Ins. Co.* v. *Constantine* (1944), 144 Ohio St. 275, 29 O.O. 426, 58 N.E. 2d 658.

Assuming, *arguendo,* that Banc-Ohio can be considered a member of a "limited class," the bank must still introduce evidence tending to show that the Accountants were "manifestly aware" that the financial statements in controversy would be provided to the class. 3 Restatement of the Law

2d, Torts (1977), Section 552, Comment *a,* at 128. A mere showing that the Accountants were aware "of the ever-present possibility of repetition to anyone" is insufficient. Section 552, Comment *h,* at 133.

The bulk of BancOhio's evidence addressed the question of negligent conduct by the Accountants. BancOhio did establish that the bank was the largest single creditor of Northern, that the Accountants knew of the bank's status as such, and that the Accountants might have been aware that BancOhio contractually had the power to require financial statements from Northern. There was no evidence that the Accountants knew that BancOhio exercised this power. None of this evidence implies that the Accountants were aware of any more than a mere possibility that Northern might submit the financial statements to BancOhio. The only direct communication between the parties was a form letter to verify the amount of Northern's debt to BancOhio. Such a form letter was sent to all of Northern's creditors.

BancOhio relies heavily upon the March 1984 deposition testimony of Terrence Henretta. Henretta testified:

"Q. Did you know that BancOhio was relying on your financial statement in making loans to Northern Ohio?

"A. I would assume they did, yes."

This testimony merely indicates that, in 1984, Henretta assumed that BancOhio had relied upon the 1979 and 1980 financial statements. Henretta's testimony does not indicate that the Accountants were aware that the financial statements would be submitted to BancOhio at the time that they were preparing the statements. Henretta consistently denied such knowledge and testified that Robert Schiesswohl requested the financial statements specifically for submission

to the John Deere Co. Northern held a John Deere franchise.

BancOhio contends that the Accountants could have "reasonably foreseen" that the financial statements would be submitted to the bank. While this may be true, the Accountants could also have "reasonably foreseen" that any current or future creditor might rely upon the statements. The plaintiff in *Haddon View Investment Co. v. Coopers & Lybrand, supra,* also argued that Ohio should adopt such a standard and the Ohio Supreme Court chose not to extend liability so far. See Note (1982), 12 Capital U.L. Rev. 327, 331-333 and fn. 29.

Since the record is devoid of any evidence tending to establish that reliance upon the financial statements by BancOhio was specifically foreseen by the Accountants, BancOhio failed to establish a prima facie case to submit to the jury.

### Summary

BancOhio's assignment of error is overruled and the judgment of the trial court is affirmed.

*Judgment affirmed.*

GEORGE and DAHLING, JJ., concur.

DAHLING, J., of the Eleventh Appellate District, sitting by assignment.