**CINCINNATI INSURANCE COMPANY, Appellant,**

v.

**MAYTAG COMPANY et al., Appellees.**

[Cite as *Cincinnati Ins. Co. v. Maytag Co.* (1989), 63 Ohio App.3d 144.]

Court of Appeals of Ohio,
Summit County.

No. 13802.

Decided May 31, 1989.

**146**

*James S. Wertheim,* for appellant.

*Susan Squires* and *Gary L. Himmel,* for appellees.

REECE, Judge.

This controversy arose out of a fire which occurred during the early morning hours of April 26, 1986, at the Metropolitan Veterinary Hospital ("Metropolitan"), and caused substantial property damage to the facility and its contents. The Cincinnati Insurance Company ("Cincinnati"), Metropolitan's casualty insurer, and appellant herein, brought a subrogation action against the Maytag Company ("Maytag"), and Humiston's Quality Appliance ("Humiston's"), appellees herein, alleging that the fire was caused by a defective gas clothes dryer manufactured by Maytag, and purchased from and installed by Humiston's.

The court held a jury trial on August 21, 1988. At the conclusion of Cincinnati's case, Humiston's successfully moved the court for a directed verdict, and was thereupon dismissed from the case. Maytag presented evidence in defense of the claim, both remaining parties made closing arguments, and the jury subsequently returned a verdict in favor of Maytag. Cincinnati appeals, asserting four assignments of error. We affirm.

## II

### Assignment of Error I

"The court erred in allowing evidence of problems with the prior dryer to come before the jury."

Cincinnati essentially asserts that the trial court erred by permitting evidence relating to a functional problem with Metropolitan's previous dryer to be brought before the jury.

Counsel for Cincinnati made the following reference during his opening statement:

"Mr. Raymond Hershey will testify that in February of 1985 he was the administrator at the Metropolitan Veterinary Hospital. At that time, the dryer that they had at the hospital was not functioning properly, it was old and they needed to replace it.

" * * *

"Additionally, [Dr. George] Kramerich will tell you that lint and animal hair did not cause this fire. He will tell you that if there had been a fire caused by lint and animal hair, there would have been arcing where that fire originated. * * * "

Thereafter, counsel for Maytag made the following reference during her opening statement, to which Cincinnati objected:

"We believe that the most probable cause is an accumulation of lint and hair in or under the dryer, and that accumulation of lint and hair was caused by poor maintenance and cleaning procedures on the part of the hospital.

" * * *

"[Linette Turner] will tell you that she knew that animal hair and lint would clog up in the dryer. And, in fact, she knew how to clean around the dryer, she knew how to clean in the duct work in the dryer, she knew how to clean the vent hood in the dryer. She knew how to take the back off the dryer and clean inside; and, in fact, she had.

"MR. WERTHEIM: I am going to object, your honor.

"THE COURT: Overruled.

" * * *

"MS. SQUIRE: In addition to Linette Turner telling you that she knew about the ability of dryers to clog up with lint and animal hair, so will Raymond Hershey. And he will tell you that he knew lint could burn, that he knew animal hair could burn, and he knew that this stuff could get all clogged up; and, in fact, was getting clogged up in a previous dryer.

"MR. WERTHEIM: Objection, your honor.

"THE COURT: Overruled.

" * * * "

■ References made by counsel in an opening statement that certain evidence will be introduced are not improper if made in good faith and with reasonable ground to believe that the evidence is admissible, even if the referenced proof is afterward excluded. *In re Appropriation of Easement* (1962), 118 Ohio App. 207, 211–213, 25 O.O.2d 57, 59–61, 193 N.E.2d 702, 705–707. Moreover, " * * * the function of an opening statement by counsel * * * is to inform the jury in a concise and orderly way of the nature of the case and

the questions involved, and to outline the facts intended to be proved. * * * " *Maggio v. Cleveland* (1949), 151 Ohio St. 136, 38 O.O. 578, 84 N.E.2d 912, paragraph one of the syllabus.

■ Maytag maintains that Cincinnati "opened the door" during its opening statement, permitting Maytag's discussion of the previous dryer and its attendant problems prior to replacement by the Maytag dryer at the center of this controversy. We agree with Maytag's argument.

Cincinnati claims that the parties and the court agreed prior to trial that no references would be made to the previous dryer and its problems. Cincinnati waived this agreement, however, when it chose to make reference to the former dryer within its opening statement. Cincinnati cannot now complain that it was prejudiced thereby.

■ Cincinnati also assigns error to the court's later allowance of further discussions relating to the earlier dryer. The record reveals, however, the following colloquy during Cincinnati's direct examination of its first witness, Raymond Hershey, Metropolitan's former administrator:

"Q. Was there ever a buildup of lint or hair around the dryer that you saw?

"A. On this dryer, I don't believe so.

" * * *

"Q. Did you ever have any problems with any other dryer that was used at the hospital?

"A. The dryer that the new subject dryer replaced had a problem with lint collecting in it. * * * "

Thus, Cincinnati elicited direct testimony from its first witness relating to the lint-collecting problems of the prior dryer.

Cincinnati's later objection to Maytag's cross-examination on this subject was thereafter overruled by the trial court. A determination as to the admissibility of evidence is a matter generally within the sound discretion of the trial court. *Yates v. Black* (Dec. 7, 1988), Summit App. No. 13525, unreported, 1988 WL 133675. See *Schaffter v. Ward* (1985), 17 Ohio St.3d 79, 80, 17 OBR 203, 203, 477 N.E.2d 1116, 1116. An appellate court will not overturn an exercise of this discretion unless it has clearly been abused, and the objecting party materially prejudiced thereby. *State v. Beverly* (Feb. 10, 1988), Summit App. No. 13245, unreported, 1988 WL 17823. See, also, *State v. Long* (1978), 53 Ohio St.2d 91, 98, 7 O.O.3d 178, 181, 372 N.E.2d 804, 808. Based upon Cincinnati's own statements, and upon our review of the record,

we cannot find that the trial court abused its discretion. Cincinnati's first error assigned is not well taken.

### III

### Assignment of Error II

"The court erred in dismissing plaintiff's claim against Humiston's quality appliance."

"In order to sustain a Civ.R. 50(A) motion for a directed verdict, there must be an absence of any substantial, competent evidence to support the party against whom the motion is made. *Strother v. Hutchinson* (1981), 67 Ohio St.2d 282, 284–285, 21 O.O.3d 177, 179, 423 N.E.2d 467, 469. Neither the weight of the evidence nor the credibility of the witnesses is considered. *Id."* *BancOhio Natl. Bank v. Schiesswohl* (1986), 33 Ohio App.3d 329, 330, 515 N.E.2d 997, 998.

Cincinnati's theory of causation, in its case-in-chief, was that a latent defect in the dryer resulted in an internal short-circuit, which in turn started a fire within the appliance through high-energy electrical arcing. Dr. George Kramerich, duly qualified as an expert witness, stated that, in his expert opinion, the fire started by the occurrence of either or both of the following: (1) the repeated heating and cooling of an alleged metal retention ring, securing a wiring harness to the metal base of the dryer, caused a thermodynamic recession of the plastic insulation on the wiring, and thereby permitted high-energy arcing; and/or (2) a defect existing in the wiring itself, occasioned either during manufacture or installation, which permitted the electrical arcing leading to the fire.

Cincinnati also called Copley Township Fire Chief Joseph J. Ezzie to testify as to his involvement in assessing the fire and its origin. On cross-examination, Chief Ezzie was asked whether " * * * it would be your opinion, sir, that the cause of the fire was a buildup of animal hair and lint?", to which he responded, "I believe that's the most reasonable assumption that can be made."

Humiston's moved for a directed verdict at the close of Cincinnati's case, after the court had discharged the jury upon recess. Cincinnati's particular claim against Humiston's, as pursued at trial, alleged that Humiston's made an express warranty to Metropolitan that the dryer was fit for a particular purpose: drying towels and small blankets at a veterinary hospital. Cincinnati argued in response to Humiston's motion that Chief Ezzie's conclusions supported a breach of the express warranty, if indeed the cause of the fire was the ignition of animal fibers and lint. Humiston's argued that Cincinnati

had failed to present any evidence demonstrating breach of any express warranty of fitness for a particular purpose, citing Cincinnati's singular reliance upon the two theories espoused by Dr. Kramerich, relating solely to latent defects within the dryer.

The court inquired of Cincinnati as to which theory of causation demonstrated a breach by Humiston's of the express warranty in the following exchange:

"THE COURT: What was the warranty? He said this is a good quality washer. This washer can be used for more than commercial operation. That's his express warranty.

"MR. WERTHEIM: Its warranty was good for the time we were using it for, that we were going to use it for animals. There is a question about this lint fire, Your Honor.

"MR. HIMMEL: Not from me.

"MR. WERTHEIM: Yes, but Chief Ezzie has testified that one of the bases is the lint fire. Let me fill in the whole gap here before we discuss this particular point.

"Ray Hershey. We have discussed the insulation, discussion about lint, the talk about that the person should be instructed as to keeping these vents clean. Humistons [sic] did not instruct Ray Hershey according to his testimony. That, I think, is negligence on their part if it was caused by a lint fire and it was caused by [sic] we didn't vacuum out this tubing. I think Humistons [sic] breached their [sic] duty to inform us pursuant to the instructions of the need to keep this tubing clean.

"THE COURT: Isn't that in the instructions, the manual that goes with the—

"MR. WERTHEIM: It's in the installation instructions. It tells the installer to tell the customer. Secondly, as far as warranties go, Ray Hershey testified there were discussions about the old lint problem with the old dryer and there was a specific statement by the salesman that the problems with the lint in the old dryer would not occur with this new dryer. That's another express warranty that if Chief Ezzie is right and this is a lint fire, then this is a breach of that warranty. There was something we were supposed to do and they indicated we didn't have to do it.

" * * * Chief Ezzie testified this is a lint fire, potentially a lint fire. If it's a lint fire, they didn't tell us. They didn't give us the instruction they were supposed to give us in the instruction manual and they warranted when we bought the machine we weren't going to have these problems.

"THE COURT: I don't think he warranted—the warranty said there was going to be no lint out of this machine, didn't it?

"MR. WERTHEIM: If there is lint catching on fire, then that warranty, it fits in.

" * * *

"MR. WERTHEIM: Your honor, for the record, Humistons [*sic*] in the testimony of Ray Hershey was they [*sic*] made specific warranties regarding the lint and there's a lint fire which Chief Ezzie testified—

"THE COURT: Aren't you telling me this was not a lint fire? Isn't that your whole case? This was not a lint fire.

"MR. WERTHEIM: We believe it wasn't a lint fire but if it was—

"THE COURT: If you are telling me it was a lint fire, [Maytag] gets a directed verdict, too. Which is it? Is it a lint fire or defect fire?

"MR. WERTHEIM: It was a defect fire."

Thus, Cincinnati premised its express warranty claim against Humiston's upon the theory of an animal fiber and lint fire, apparently based upon the testimony of Chief Ezzie, then specifically rejected this theory of causation. The court thereon rendered a directed verdict in favor of Humiston's, finding that Cincinnati failed to present evidence supporting the contractual claim of breach of an express warranty.

The trial court is charged with the duty to withhold from the jury an issue upon which evidence is not presented. *Grau v. Kleinschmidt* (1987), 31 Ohio St.3d 84, 90, 31 OBR 250, 255, 509 N.E.2d 399, 404. Cincinnati specifically rejected the theory of causation upon which it buttressed its argument regarding express warranty. Thus, upon the record presented and the foregoing analysis, Cincinnati's second error assigned is not well taken.

## IV

### Assignment of Error III

"The jury's verdict was against the weight of the evidence and should be overturned."

In reviewing a jury verdict allegedly contrary to the weight of the evidence, a court of appeals is guided by a presumption that the findings of the jury were indeed correct. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 411–412, 461 N.E.2d 1273, 1276. A judgment which is supported by some competent, credible evidence going to all essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, paragraph one of the syllabus.

Cincinnati argues that the jury was presented with only two possibilities for the fire's causation: (1) that the dryer itself was defective, under the theories espoused by Dr. Kramerich, or (2) that a collection of lint and animal fibers beneath the appliance in some manner combusted. Maytag was not charged with a duty to prove any theory of ignition; rather, Cincinnati had the burden of proof before the triers of fact. Cincinnati relied upon the testimony of its expert and his theories as to causation. Maytag presented expert testimony as to the absence, in the manufacturing process, of the metal retention ring critical to Cincinnati's insulation recession theory.

Accordingly, we hold that the jury could reasonably conclude that the conflagration did not occur under the conditions alleged by Cincinnati. Thus, Cincinnati's third error assigned is not well taken.

## V

### Assignment of Error IV

■ "The court erred in failing to give requested jury instruction [*sic*]."

Civ.R. 51(A) provides:

"A party may not assign as error the giving or the failure to give any instruction unless he objects thereto before the jury retires to consider its verdict, stating specifically the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury."

When a party fails to object on the record to the giving or the failure to give a requested jury instruction before the jury begins deliberations, error thereunder later assigned is waived. *Schade v. Carnegie Body Co.* (1982), 70 Ohio St.2d 207, 209, 24 O.O.3d 316, 317, 436 N.E.2d 1001, 1003.

In the instant case, the following dialogue occurred:

"MS. SQUIRE: In terms of the failure to warn, I would also ask there be an instruction, if the plaintiff's insured in this case knew a particular danger, that there is no need to warn.

"THE COURT: Well, there's absolutely no evidence that the plaintiff's insured knew in this case of a known danger, none whatsoever. I mean—I would say that there probably isn't a person in this courthouse today that ever had to back off their right and there's no knowledge on the part of the plaintiff's insured that they had to keep the dryer safe, they had to remove the back and vacuum out the interior of the dryer. That's why there is no assumption of risk involved.

"MS. SQUIRE: That's—

"MR. WERTHEIM: Your Honor, may I, in light of that, ask for an instruction to the jury to that affect [*sic* ] so that the jury doesn't misconstrue the evidence?

"THE COURT: They have been properly instructed on that. They were instructed on that. There is no basis for assumption of risk here so there is no way I am going to charge on it."

The record does not demonstrate an objection by Cincinnati to the court's ruling denying the instruction. Treating the court's denial, as the overruling of an objection, *arguendo*, we cannot say that the court erred in failing to give the requested instruction.

■ The record shows that Maytag requested that the court give an instruction relating to Metropolitan's assumption of the risk in operating the dryer. The court refused, stating that " * * * there is no evidence here on which [Maytag] can state that [Cincinnati's] insured assumed a known risk. * * * " Assumption of the risk is an affirmative defense, properly to be pursued by Maytag. Cincinnati may not now predicate error upon the court's failure to give an instruction to negate assumption of the risk where no such defense is raised.

Accordingly, Cincinnati's fourth error assigned is not well taken.

## IV

### Summary

Based upon the foregoing analysis and our disposition of the assignments of error, the judgment of the trial court is affirmed.

*Judgment affirmed.*

CACIOPPO, P.J., and BAIRD, J., concur.