OPINION
Plaintiffs-appellants, Barbara and James Syphax, appeal the jury verdict and the denial of their motion for a new trial in their personal injury suit against defendant-appellee, Susan Randall Kirkland.
On August 23, 1995, Barbara and Susan were involved in a car accident in which Susan rear-ended Barbara's minivan. The minivan driver's seat came off its track, throwing Barbara into the airbag. She was taken to the Bethesda Medical Center emergency room where she was treated for possible neck injuries. She was released that same day, but suffered from neck and back pain for a significant period of time. The present suit arises out of this accident, but a review of Barbara's past medical history is necessary to understand the issues in this appeal.
Barbara has a long history of medical problems and treatments dating back twenty years. In 1978, she injured her neck and right shoulder as a result of breaking concrete with a sledgehammer. In 1985, she had surgery on her right shoulder to alleviate problems which had developed since the 1978 injury. In 1987, Barbara injured her neck while working as a registered nurse at a local hospital. She was injured when helping to lift a patient for treatment. In June 1988, she underwent cervical surgery which fused the fourth and fifth cervical vertebrae in her neck.
After the 1988 surgery, Barbara quit her employment as a registered nurse, and began working at the car wash which she and James had recently purchased. In 1990, Barbara was involved in an automobile accident in which her car was rear-ended. Her prior injuries were aggravated. In March 1991, she underwent another cervical surgery which fused her sixth and seventh vertebrae. Although it took longer for her to recuperate, trial testimony was that she recovered fully except for some lingering pain. Beginning in 1993, Barbara began seeing a pain specialist to alleviate the pain from the prior injuries. A suit was filed as a result of the 1990 accident seeking compensatory damages for permanent injury to Barbara's neck and temporary loss of consortium for James. This suit was settled in 1994.
In 1995, Barbara was involved in four automobile accidents, including the one leading to the instant case. In January 1995, her car was hit from the side, but there was no serious damage to either vehicle. Testimony and medical records indicated that Barbara suffered no injury or noticeable aggravation of her prior injuries. In March 1995, she was involved in a highway accident. She complained of increased pain in her neck and upper back as a result of the accident. The pain continued for months, but she testified that she otherwise fully recovered. In July 1995, while on the way to a doctor's appointment, Barbara swerved into another car, causing minor damage. Neither Barbara nor the other driver reported any injuries.
On August 23, 1995, the accident caused by Susan occurred. Although Barbara was treated for possible neck injuries in the emergency room, it was not investigated whether her back was injured. Two days later, she visited her family doctor, Dr. Steven Raymond Weber, complaining of bruises and cervical strain. On October 2, 1995, Barbara returned to Dr. Weber to complain of a developing pain in her lower back, which spread into her right thigh. Dr. Weber prescribed anti-inflammatory medication and exercises to alleviate the pain. At that time, she was also seen by Dr. Melvin Whitfield, a neurosurgeon, and she continued to be seen by her pain specialist.
On October 25, 1995, Barbara was referred by Dr. Whitfield to a massage therapist for muscle problems. Drs. Weber and Whitfield recommended conservative treatments. Dr. Weber testified that he began to suspect that Barbara may have begun to develop fibromyalgia and myofascial pain syndrome. Fibromyalgia is a musculoskeletal condition associated with widespread pain and stiffness, sleeping problems, personality changes, and decreased stamina. It is diagnosed through extensive review of the patient's history and a physical exam in which the patient must exhibit at least eleven of eighteen tender muscle points both above and below the waist. The condition is treated by a wide variety of methods, from proper sleep and exercise in milder cases so that the body may relax, to intensive therapy, medications, and muscle and joint manipulation in more severe cases. In the worst cases, fibromyalgia can be a chronic condition.
Myofascial pain syndrome is also a musculoskeletal condition, but rather than being spread throughout the body, it is more localized, occurring when muscles begin to spasm until they become perpetually tense. Often, it involves not only the muscle, but also the nerves and fascia, the thin membrane covering the muscle. As with fibromyalgia, myofascial pain syndrome is treated through medications and physical therapy.
When Barbara began massage therapy, her therapist noticed that her entire back and other muscles felt "like concrete." Even after intensive massaging, the muscles loosened only slightly. Beginning in late 1996, Barbara began to see a chiropractor. After one year of treatment, Barbara quit going to the chiropractor because her condition had not improved.
On January 22, 1997, Barbara and James filed a complaint against Susan and her unnamed automobile insurance company seeking compensatory and other damages. Barbara sought to recover her medical expenses, as well as pain and suffering and other injuries. James sought to recover for permanent loss of consortium. The case proceeded through discovery.
Barbara complained to Dr. Weber about her neck and back, including a new complaint about her lower back. In early 1998, Dr. Weber referred Barbara to Dr. Thomas James Romano, a rheumatologist. Dr. Romano diagnosed Barbara as suffering from post-traumatic fibromyalgia, multi-regional myofascial pain syndrome, and a possible cognitive injury. Barbara reported to Dr. Romano many symptoms and conditions which she had not reported to her other doctors.
As part of discovery, Susan had Barbara examined in December 1997 by Dr. Michael Kramer, a neurologist. Dr. Kramer had examined Barbara in 1993 as part of the 1990 accident lawsuit. At that time, she had complained only about neck and shoulder pain. In the instant case, Dr. Kramer concluded that Barbara did not suffer a head trauma which would have resulted in cognitive injury. He also concluded that she did not suffer any injury which would have resulted in the conditions diagnosed by Dr. Romano. Dr. Kramer found that Barbara's prior cervical injuries may have been temporarily strained, but there was no evidence of an injury or strain to the lumbar, or lower region, of her spine. Dr. Kramer based his opinion upon his own examination of Barbara, as well as the fact that many of the symptoms that Barbara reported to Dr. Romano had not been reported earlier.
Trial was held on January 19 and 20, 1999. Barbara, James, two of their daughters, and an employee from the car wash testified. Barbara and James also presented Beverly Holden, Barbara's massage therapist, and Dr. Romano as witnesses, and they introduced into evidence the deposition testimony of Dr. Weber. Susan presented only Dr. Kramer's deposition testimony in her defense.
The trial evidence and testimony established the above facts. James and Barbara testified that the injuries arising out of the instant accident have had dramatic consequences upon their marriage and lifestyle. Because of Barbara's constant pain, she cannot travel, and they no longer take vacations. Their sexual relationship has suffered. James spends more time with the car wash business, in addition to his regular employment, because Barbara is unable to perform the tasks for which she was earlier responsible. James testified that in some ways, he has "lost his wife."
During both opening statement and closing argument, defense counsel vigorously attacked Dr. Romano's testimony and credibility and the basis for Barbara and James' claims. He stated that Dr. Romano was a "hired gun" and that Barbara's injuries and condition were conceived in her attorneys' office. Barbara and James' counsel objected to these comments in opening statements and moved for a mistrial, but the motion was denied. No objections were made in closing arguments.
The jury returned a verdict awarding Barbara $5,000 for her injuries and expenses. James received no award for his loss of consortium claim. The trial court entered judgment on the jury verdict on February 16, 1999. On March 2, 1999, Barbara and James filed a motion for a new trial or judgment notwithstanding the verdict and a motion for sanctions. They contended that Susan's counsel had made improper and inflammatory remarks in opening statement and closing argument which warranted a new trial and sanctions. They further argued that the jury verdict was against the weight of the evidence. On April 1, 1999, the trial court overruled the motions. Barbara and James appeal raising four assignments of error.
Assignment of Error No. 1:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFFS-APPELLANTS IN OVERRULING PLAINTIFFS' OBJECTION TO DEFENSE COUNSEL'S IMPROPER STATEMENTS IN OPENING STATEMENT AND IN FAILING TO GRANT PLAINTIFFS' MOTION FOR A MISTRIAL AT THE END OF OPENING STATEMENT.
Assignment of Error No. 2:
 THE CLOSING ARGUMENT OF DEFENSE COUNSEL CONSTITUTED ATTORNEY MISCONDUCT AND WAS SO FLAGRANTLY IN VIOLATION OF PROPRIETY THAT IT BECAME THE DUTY OF THE TRIAL COURT TO STOP IT WITHOUT ANY OBJECTION OF COUNSEL. THE TRIAL COURT ERRED IN FAILING TO LIMIT THE ARGUMENT OF DEFENSE COUNSEL.
Assignment of Error No. 3:
 THE JURY VERDICT AND JUDGMENT THEREON IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
Assignment of Error No. 4:
 THE TRIAL COURT ERRED IN DENYING PLAINTIFFS' MOTION FOR A NEW TRIAL.
In their assignments of error, Barbara and James contend that the arguments of Susan's counsel were so inflammatory and unsupported by the evidence that they warranted the trial court to act sua sponte or to order mistrial or new trial. They contend that these comments led the jury to render an award which was inadequate and against the weight of the evidence. For convenience, we address the assignments of error together.
The decision to grant or deny a motion for a new trial pursuant to Civ.R. 59 rests in the trial court's discretion. Sharp v.Norfolk W. Ry. Co. (1995), 72 Ohio St.3d 307, 312; Dillon v.Bundy (1991), 72 Ohio App.3d 767, 773, jurisdictional motion overruled, 61 Ohio St.3d 1422. "Abuse of discretion" connotes that the trial court's judgment was unreasonable, arbitrary, or unconscionable. An abuse of discretion will be found where the trial court's decision is without a reasonable basis or is not supported by competent, credible evidence. Middendorf v.Middendorf (1998), 82 Ohio St.3d 397, 401. A new trial may be granted where the moving party has established one or more of the grounds for a new trial as provided in Civ.R. 59(A). Persistent abuse by counsel during arguments may be proper grounds for a new trial. Maggio v. Cleveland (1949), 151 Ohio St. 136, paragraph two of the syllabus; Dillon, 72 Ohio App.3d at 772.
Counsel are given wide latitude in making oral arguments to the jury. Pang v. Minch (1990), 53 Ohio St.3d 186, paragraph two of the syllabus; Sheets v. Norfolk Southern Corp. (1996), 109 Ohio App.3d 278,291. Generally, a judgment may not be reversed on the basis of trial counsel's misconduct during arguments unless a proper and timely objection is made so that the trial court may take curative action. Goldfuss v. Davidson (1997), 79 Ohio St.3d 116,121; Snyder v. Standford (1968), 15 Ohio St.2d 31, paragraph one of the syllabus. Where no objection is made, in cases where counsel's statements so grossly and persistently abuse the privilege given to counsel in arguments, the trial court may suasponte take actions to nullify the prejudicial effect of the argument. Id.; Clark v. Doe (1997), 119 Ohio App.3d 296, 307;Dillon, 72 Ohio App.3d at 772.
The determination of whether counsel's arguments constitute misconduct and, if so, whether such misconduct was sufficient to prejudice the jury against the complaining party and to warrant a new trial is left to the trial court's discretion. Pang, 53 Ohio St.3d at paragraph three of the syllabus; Star Bank Natl. Assn. v.Cirrocumulus Ltd. Partnership (1997), 121 Ohio App.3d 731, 743. Before a reviewing court may reverse the trial court regarding its decision, the record must clearly demonstrate that counsel's arguments were highly improper and tended to inflame the jury.Lance v. Leohr (1983), 9 Ohio App.3d 297, 298. The challenged argument must be viewed in its entirety when determining if it was improper. Cook v. Akron Gen. Med. Ctr. (1993), 86 Ohio App.3d 196,198. Where the jury is given multiple instructions that counsel's arguments are not evidence, an appellate court must presume that the jury followed these instructions. Pang, 53 Ohio St.3d at paragraph four of the syllabus. Counsel's statements must also be viewed in light of the evidence presented at trial, and whether such evidence supports the jury's verdict. Dillon,72 Ohio App.3d at 773.
When making arguments to the jury, counsel may properly make the statement that certain evidence will be introduced, so long as it is made in good faith and with reasonable grounds to believe the evidence is admissible, even should that evidence be later excluded by the court. Cincinnati Ins. Co. v. Maytag Co. (1989),63 Ohio App.3d 144, 147. Any reasonable deductions or inferences from referenced evidence are legitimate subjects for argument.Stonerock v. Miller Bros. Paving Co. (1991), 72 Ohio App.3d 123,137, motion to certify conflict overruled, 60 Ohio St.3d 712. Counsel may make allegations of an expert's bias and pecuniary interest where there is evidence to provide at least an inference of such bias or interest. Clark, 119 Ohio App.3d at 307. Even so, counsel may not make statements in argument which are obviously erroneous, misleading, or not supported by any evidence.Drake v. Caterpillar Tractor Co. (1984), 15 Ohio St.3d 346,347-348.
In the instant case, Susan's counsel, in opening statement, discussed Barbara's prior history and argued that her present injuries were not due to the accident with Susan. He asserted that there was substantial conflict as to whether Barbara had displayed symptoms of fibromyalgia or properly reported any such symptoms to her doctors. Counsel argued that Dr. Romano had a financial interest in the case because he might be entitled to some part of any judgment or settlement due to a financial waiver that Barbara had signed.
In his closing arguments, Susan's counsel again attacked Dr. Romano's credibility, as well as that of Barbara and James. Counsel extensively argued that Barbara may have either exaggerated or manufactured her injuries when describing them to her physicians. Counsel argued that her claims could not be believed, considering that many of her symptoms and medical bills increased soon after she retained counsel and after she visited Dr. Romano. Damages were a contested issue, especially in light of Barbara's long history of accidents, injuries, and chronic pain, including three automobile accidents in the eight months preceding the accident which is the subject of this case.
It is axiomatic that the judge in this case was in the best position to observe the conduct of trial counsel and the evidence presented before the court. The trial court, in its discretion, concluded that the verdict of the jury should not be disturbed. For this court to conclude otherwise would invade the province of the jury and inappropriately substitute the judgment of this court for that of the trial court.
In no way is this court condoning the comments of counsel in closing arguments. Counsel did, in fact, make numerous suggestions of unprofessional conduct on the part of Barbara's counsel and treating physicians, including claims of possible perjury. Although these comments were beyond the privilege given to counsel in closing arguments, we cannot conclude that leaving the jury verdict intact challenges the legitimacy of the judicial process itself.
In fact, this court would challenge the legitimacy of the judicial process were we to find that the trial court abused its discretion in overruling Barbara and James' motion for a new trial. There is a presumption that juries follow the instructions they are given, especially where the evidence presented at trial was conflicting and subject to serious attack, as was the evidence of Barbara's injuries. Although Barbara and James presented evidence in support of their claims, that evidence was questioned throughout the course of the trial, especially as to whether Barbara's present injuries could have arisen from one of her earlier injuries. The jury was properly instructed that they were the ultimate finders of fact and that counsel's arguments were not evidence.
The trial court felt there was evidence to support the jury's verdict. The trial court did not abuse its discretion by overruling the motion for a new trial. For this court to state otherwise would ignore the well-established principle that a trial judge is in the best position to observe the conduct of trial counsel and the evidence presented and to determine, through the exercise of sound discretion, whether and when to grant a new trial. The assignments of error are overruled.
Judgment affirmed.
POWELL, P.J., concurs separately, WALSH, J., dissents.