LEVINE, D.B.A. TELETREND, APPELLANT, *v.* BECKMAN, APPELLEE.

*Fein, Vande, Werken & Petersen Co., L.P.A., William S. Fein* and *Brian W. Shanahan,* for appellant.

*Feinstein, Crowley, Fusco & Mulligan, Michael J. Fusco* and *David A. Ison,* for appellee.

STRAUSBAUGH, J. This is an appeal by plaintiff from a judgment of the court of common pleas denying injunctive relief. The court, upon plaintiff's motion for preliminary injunctive relief, consolidated the hearing as to the preliminary injunction with the merits for permanent injunctive relief. At the close of plaintiff's case, the trial court dismissed that branch of the complaint on defendant's oral motion.

Plaintiff, Stewart Levine, d.b.a. Teletrend, is a manufacturer of heat-applied graphics, known as "transfers." The transfer business consists of creating designs and printing them in a manner that allows them to be transferred to textiles used by customers. Although there are various processes used in the industry, Teletrend uses a silkscreen process and markets its products nationally through trade magazines, catalogs, trade shows, and so forth.

Teletrend has developed a unique product within the transfer industry. These transfers are marketed by Teletrend under the trade name "Genesis," which transfers constitute the majority of Teletrend's sales. Because of the unique quality of the Genesis transfers, Teletrend is able to command an unusually high price for these products. The Genesis transfers, as the name indicates, use a method developed by Teletrend over a period of several years through trial and error experimentation. As such, the methods developed by Teletrend are carefully guarded. This secrecy is maintained by Teletrend via physical segregation of

(No. 87AP-837 — Decided May 3, 1988.)

the various departments and through the use of its corporate structure.

Defendant, Michael Beckman, was hired by Teletrend as an artist in January 1986. He was later promoted to art supervisor and apparently had access to all production areas as well as the art department. In short, defendant was familiar with the various aspects of the Genesis manufacturing process, including specific materials and techniques used to make the transfers. Subsequently, in March 1987, defendant voluntarily resigned. Currently, defendant is an independent contractor, but sells his work to a company which competes with Teletrend. Plaintiff maintains that this company now has the ability to use defendant's knowledge to avoid the laborious and expensive development work performed by Teletrend to develop the Genesis transfer process.

When he was hired, Beckman executed an agreement which contained two restrictive covenants. The first covenant provided that defendant would not work for a competitive company for two years after leaving Teletrend. The second covenant prohibited defendant from revealing plaintiff's secret manufacturing process. When plaintiff discovered that defendant was, in effect, working as an independent contractor for his competitor, suit was filed to enforce both covenants. The complaint sought both temporary and permanent injunctive relief regarding each of the two covenants.

At a hearing on plaintiff's motion to preliminarily enjoin defendant from either divulging trade secrets or working for a competitor, defendant moved the court to dismiss the complaint at the close of plaintiff's case. Defendant maintained that plaintiff had failed to establish irreparable harm. The court consolidated the hearing as to the preliminary injunction regarding the noncompetition covenant with the trial on the merits for permanent injunctive relief as to that covenant and dismissed that branch of plaintiff's complaint, finding no just reason for delay. The court did, however, grant plaintiff's motion for temporary relief as to the nondisclosure of information. Plaintiff now appeals and assigns one error for review:

"The Trial Court abused its discretion in denying injunctive enforcement of the non-competition covenant."

It is plaintiff's position that the trial court abused its discretion in denying injunctive enforcement of the noncompetition agreement. Specifically, plaintiff maintains that the evidence adduced at trial established that the restraint sought was no greater than necessary to protect plaintiff's legitimate business interests and that the effect of such enforcement would not be unduly harsh on defendant.

Initially, we note that this matter is before the court apparently as the result of an involuntary dismissal pursuant to Civ. R. 41(B)(2). That section reads:

"After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Rule 52 if requested to do so by any party."

Although provided for by the rule, neither party requested that the court make findings of fact or conclusions of

law. As such, our review of the dismissal is not limited to a specific issue.

In ruling upon a Civ. R. 41(B)(2) motion, it is the function of the trial court to review the evidence and the law. Civ. R. 41(B)(2). In this respect, the trial court is not required to construe the evidence in favor of the nonmoving party, but rather may weigh the evidence and render judgment. *Central Motors Corp.* v. *Pepper Pike* (1979), 63 Ohio App. 2d 34, 47-49, 13 O.O. 3d 347, 356-357, 409 N.E. 2d 258, 270-271; *Hamilton Acceptance Corp.* v. *National Dealer Services, Inc.* (June 23, 1981), Franklin App. No. 81AP-79, unreported, at 3. Where plaintiff's evidence is insufficient to sustain plaintiff's burden in the matter, the trial court *may* dismiss the case. See Civ. R. 42(B)(2); *Hamilton Acceptance Corp., supra.* While dismissal is discretionary with the trial court, that discretion is not absolute. Rather, the decision to dismiss must be guided by the evidence in the case and the pertinent law. Cf. *Jacobs* v. *Auglaize Cty. Bd. of Commrs.* (1971), 27 Ohio App. 2d 63, 65, 56 O.O. 2d 245, 246, 272 N.E. 2d 635, 636-637; *Ahern* v. *Ehrie* (Aug. 30, 1984), Franklin App. No. 83AP-223, unreported, at 6.

As to this latter requirement, the case law relevant to the instant matter is composed of three elements. The first of these requires that the noncompetition agreement be valid. *Raimonde* v. *Van Vlerah* (1975), 42 Ohio St. 2d 21, 71 O.O. 2d 12, 325 N.E. 2d 544. In *Raimonde,* the Supreme Court of Ohio set forth a rule of reasonableness with respect to the enforcement of noncompetition agreements between employees and their employer. Such an agreement is reasonable if: (1) it is no greater than is required for the protection of the employer; (2) it does not impose undue hardship on the employee; and (3) it is

not injurious to the public. *Id.* at paragraph two of the syllabus. Second, the plaintiff is required to adduce clear and convincing evidence as to each of these factors in order to overcome a defendant's Civ. R. 41(B)(2) motion. Cf. *Apronstrings, Inc.* v. *Tomaric* (Aug. 7, 1987), Lake App. No. 11-272, unreported. Finally, where the relief sought is the equitable remedy of injunction, it is plaintiff's duty to establish irreparable harm. See *Arthur Murray Dance Studios* v. *Witter* (C.P. 1952), 62 Ohio Law Abs. 17, 41-58, 105 N.E. 2d 685, 701-712 (extensive discussion of irreparable injury in the context of injunction to enforce noncompetition clause).

With respect to this latter requirement, generally the party seeking injunctive relief has the burden of showing actual irreparable harm. See *id.* at 41-46, 105 N.E. 2d at 701-705. Actual irreparable injury is usually not presumed, but instead must be proved. *Id.* However, to the extent that irreparable harm is actually threatened, injunctive relief may be available. *Id.* at 46-47, 105 N.E. 2d at 705; see, also, *Murfin, Inc.* v. *Kyle* (Mar. 25, 1980), Franklin App. No. 79AP-602, unreported, at 4-11. The existence of an actual threat of irreparable injury may be established by showing that the employee possessed knowledge of the employer's trade secrets. *Arthur Murray, supra,* at 53-56, 105 N.E. 2d at 709-711.

Here, plaintiff's evidence established that defendant was employed as an artist to prepare drawings and color separations as one of the four steps required to produce the color transfers; that defendant assumed certain supervisory duties which required his familiarity with all four aspects of the transfer process; that defendant had a basic understanding, given his art background, of the separation process; that plaintiff had perfected a specific

separation process known as "Genesis"; that plaintiff developed this process via trial and error over a several-year period; that this process involved the use of specific inks, color schemes and organization to achieve the end result; and that this product was unique in the field.

Given plaintiff's uncontroverted evidence, we think such evidence was sufficient to establish a "trade secret" within the ambit of R.C. 1333.51(A)(3). Cf. *Valco Cincinnati, Inc.* v. *N & D Machining Service, Inc.* (1986), 24 Ohio St. 3d 41, 24 OBR 83, 492 N.E. 2d 814, 59 A.L.R. 4th 629. Thus, this evidence established irreparable harm. Accordingly, to the extent that the trial court's dismissal of this cause pursuant to Civ. R. 41(B)(2) was premised upon plaintiff's failure to establish irreparable harm, the dismissal was erroneous.

However, under the circumstances of this case, we conclude that any error on the part of the trial court does not require reversal. Given that the trial court was also vested, under *Raimonde, supra,* with the power to amend or modify a noncompetition clause to achieve a reasonable result, we are unable to conclude that the result in this case is unreasonable. Specifically, the trial court granted plaintiff's motion to preliminarily enjoin defendant from divulging plaintiff's trade secrets. Since that is the gravamen of plaintiff's complaint, it would appear that the scope of the trial court's remedy was appropriate. Compare *Valco Cincinnati, Inc., supra,* at 47-48, 24 OBR at 88, 492 N.E. 2d at 819-820, 59 A.L.R. 4th at 637. As that case indicates, the purpose of Ohio's trade secret law is to maintain commercial ethics, to encourage invention, and to protect employers' investments and proprietary information. *Id.* at 48, 24 OBR at 89, 492 N.E. 2d at 820, 59 A.L.R. 4th at 638. Thus, enjoining an employee from disclosing those trade secrets may be sufficient to further the policies embodied in R.C. 1333.51 (A)(3). Accordingly, plaintiff's assignment of error is overruled.

In light of our resolution of this matter, however, it is clear that the trial court abused its discretion in certifying to this court Count 1 of the complaint, pursuant to Civ. R. 54(B). Since we have determined that the order appealed from is inextricably intertwined with the claim still pending before the trial court, the court of common pleas should have retained the claim for enforcement of the noncompetition clause until it finally resolved plaintiff's claim under the trade secrets clause. Cf. *Whitaker-Merrell Co.* v. *Carl M. Geupel Constr. Co., Inc.* (1972), 29 Ohio St. 2d 184, 58 O.O. 2d 399, 280 N.E. 2d 922. With this caveat, although plaintiff's sole assignment of error is not well-taken, the judgment of the common pleas court is vacated and the cause is remanded with instructions that there exists just reason for delay as to plaintiff's claim for enforcement of the noncompetition clause.

*Judgment vacated and cause remanded with instructions.*

REILLY and BOWMAN, JJ., concur.