SCHULZ, Appellee,

v.

SULLIVAN et al., Appellants.

[Cite as *Schulz v. Sullivan* (1993), 92 Ohio App.3d 205.]

Court of Appeals of Ohio,
Hamilton County.

Nos. C–920694, C–920701.

Decided Dec. 22, 1993.

*Jacobs, Kleinman, Seibel & McNally* and *Mark J. Byrne,* for appellee.

*White, Getgey & Meyer* and *Gregory A. Ruehlman,* for appellants Thomas and Mary Sullivan.

*Daniel F. Burke,* for appellants Panaro Realty, Inc. and Daniel Sullivan.

---

*Per Curiam.*

Defendants-appellants Thomas and Mary Sullivan ("the Sullivans"), Panaro Realty, Inc., and Daniel Sullivan appeal from the judgment of the trial court, entered on August 10, 1992, in favor of the plaintiff-appellee, Diane Schulz. In their multiple assignments of error, the appellants claim, in essence, that the evidence adduced at trial failed to establish that the appellants, by failing to disclose to Schulz, orally or in writing, that water had accumulated in the basement of a residence on two occasions, fraudulently induced her to purchase the property.

In 1987, the Sullivans, pursuant to a lease, moved into a home located at 4997 Western Hills Avenue, in Cincinnati. After approximately one year, the Sullivans purchased the residence and lived at that address until July 1990, when the

property was sold to Schulz. The Sullivans conceded at trial that on two instances while they resided in the home, severe rainstorms occurred in the area and water entered the basement and accumulated on the floor. After one such occasion, Thomas Sullivan telephoned the Metropolitan Sewer District to determine the cause of the invasion of water into his home. He was informed at that time that the drainage system that serviced his property was inadequate to handle substantial amounts of runoff from rainfall and that, undoubtedly, his system was overwhelmed by the heavy rains, thereby causing excess water to back up into his basement.

In May 1990, the Sullivans decided to sell the property and listed the residence with their son Daniel, who was a licensed real estate agent employed by Panaro Realty. On May 14, 1990, Schulz visited the property, inspected the rooms in the home, and questioned Dan Sullivan about a new section of concrete in the basement floor, and about whether something was wrong with the drain in the basement floor. Dan Sullivan responded, "I don't know," and did not mention the previous water problems in the home, even though he was aware, at least on one occasion, that the drainage system had failed and that the basement floor had been covered with five inches of water.

After a period of negotiation, Schulz agreed to purchase the home for $62,500, and she took possession of the property in July 1990. Several weeks later, on August 28, 1990, a severe rainstorm passed through Hamilton County along a path that included Schulz's home. The sewage/drainage system connected to her property was unable to handle the runoff from the rainfall and approximately thirty-five inches of water, debris, and sewage accumulated in Schulz's basement. Schulz, at that time, expressed a desire to rescind the purchase contract and to restore ownership of the property to the Sullivans, but the parties were unable to resolve their differences. Approximately one month later, Schulz's basement was again flooded with water.

On October 16, 1990, Schulz initiated the instant action against the appellants alleging, *inter alia*, that the appellants fraudulently concealed the fact that the basement of the home had an inherent propensity to flood with sewage and water when the sewage/drainage system became overloaded by rainfall. After the appellants filed their respective answers to the allegations set forth in the complaint, and after discovery was had on the matter, a bench trial was commenced. At the end of the plaintiff's presentation of evidence, the appellants, pursuant to Civ.R. 41(B)(2), moved the court to dismiss the case. The motions were denied and the trial court subsequently entered judgment in favor of Schulz. In an entry dated August 10, 1992, the trial court ordered that the contract memorializing the sale of the subject real estate be rescinded, and that the appellants, jointly and severally, pay to Schulz the sum of $75,530.72, which

represented the purchase price paid by Schulz, plus interest on that sum at the rate of ten percent per annum beginning on June 26, 1990, and accruing until the date of the journalization of the judgment.

■ In their first assignments of error,[1] the appellants allege that the trial court's judgment was against the manifest weight of the evidence and contrary to law. In support of these assignments, the appellants allege that the evidence adduced at trial failed to establish that Schulz was fraudulently induced to purchase the property at issue. These assignments are overruled.

■ Where, as here, a litigant maintains an action to rescind a contract on the ground that it was procured by fraudulent representations, it must be proved by clear and convincing evidence (1) that there were actual or implied representations of material matters of fact, (2) that such representations were false, (3) that such representations were made by one party to the other with knowledge of their falsity, (4) that they were made with intent to mislead the other party to rely thereon, and (5) that such party relied on such representations with a right to rely thereon. *Cross v. Ledford* (1954), 161 Ohio St. 469, 53 O.O. 361, 120 N.E.2d 118, paragraph two of the syllabus; see, also, *Staczek v. Hunger United States Special Hydraulic Cylinders Corp.* (Feb. 8, 1985), Wood App. No. WD–84–54, unreported, 1985 WL 8391. Clear and convincing evidence was described by the court in the third paragraph of the syllabus of *Cross* as that degree of proof which is more than a mere preponderance of the evidence, but less than beyond a reasonable doubt, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established. A court of equity, when asked to rescind a contract on the ground of fraud, must look to all of the circumstances of the case, and must be guided by the rules of equity as well as the rules of common sense. *Watch What Develops Franchise Concepts, Inc. v. Custom 1–Hour Photo, Inc.* (Oct. 17, 1990), Summit App. No. 14592, unreported, 1990 WL 163950.

In the instant case, paragraph four of the contract to purchase provided in pertinent part that:

"SELLER'S CERTIFICATION: Seller certifies that to the best of his/her knowledge, all fireplaces, chimneys, electrical, plumbing, including water wells and septic/sewage systems, heating and air conditioning system, and all other items stated in Paragraphs 2 and 3, to be included in the sale are and will be operational and free from all known material defects on date of possession, except no exceptions, and that to the best of Seller's knowledge, there exists no roof or

---

1. Although the Sullivans filed a separate appeal from that of Panaro Realty, Inc. and Daniel Sullivan, the first two assignments of error advanced in each of their respective briefs are identical and will be addressed simultaneously.

basement leakage, except <u>no exceptions.</u> Seller certifies that * * * there presently exists no defects or conditions known to Seller which would adversely affect or materially impair the fitness of the Property for the purpose of its intended use * * *."

Clearly, in this document, the Sullivans represented to Schulz that the sewage system was free from material defects, that there existed no basement leakage, and that the residence was free of any defect or condition that would adversely affect or materially impair the fitness of the property for its intended use. These assertions, however, are at odds with the undisputed facts of this case, which demonstrate that the Sullivans and Dan Sullivan were aware that the residence's sewage/drainage system had problems on prior occasions that caused leakage or flooding in the home's basement. The appellants nonetheless claim that the home had no defects; they maintain, instead, that the sewage/drainage pipe running along the street in front of the residence was inadequate and inferior and was, in fact, the sole reason for water entering the basement. While there is some truth to this argument, the fact remains that the substandard sewage/drainage system did have a clear impact on the condition of the residence and did, on certain occasions, materially affect Schulz's use and enjoyment of her home. Undoubtedly, Schulz, like any prospective buyer, expected to be informed of any defects or irregularities in the home that would, in all likelihood, interfere with, limit or prevent her use of the property.

Under the circumstances that exist in this case, we are persuaded that Schulz demonstrated by clear and convincing evidence that the appellants knowingly made representations about the sewage/drainage system and the basement that were material and false, and that the representations were offered with the intent to mislead her. Thus, Schulz's claim of fraud against the appellants was supported by the underlying facts of the case and the first assignments of error are overruled.

■ In their second assignments of error, the appellants allege that the trial court erred when it denied their motions for dismissal of the case pursuant to Civ.R. 41(B)(2). In support of these assignments, the appellants contend that the doctrine of *caveat emptor* barred Schulz from recovering on the claims advanced in her complaint. These assignments of error are without merit.

■ Civ.R. 41(B)(2) provides that a defendant may move for a dismissal after the plaintiff has completed the presentation of his evidence, in an action tried by the court without a jury, on the ground that upon the facts and the law the plaintiff has shown no right to relief. When the trial court rules on such a motion, its function is to review the evidence and the law. *Levine v. Beckman* (1988), 48 Ohio App.3d 24, 548 N.E.2d 267. "Where plaintiff's evidence is

insufficient to sustain plaintiff's burden in the matter, the trial court *may* dismiss the case." *Id.* at 27, 548 N.E.2d at 270. "While dismissal is discretionary with the trial court, that discretion is not absolute. Rather, the decision to dismiss must be guided by the evidence in the case and the pertinent law." *Id.*

■ The doctrine of *caveat emptor* precludes recovery in an action by the purchaser for a defect in real estate where (1) the condition complained of was open to observation or discoverable upon reasonable inspection, (2) the purchaser had the unimpeded opportunity to examine the premises, and (3) there was no fraud on the part of the vendor. *Uihlein v. Lauch* (Jan. 29, 1992), Hamilton App. No. C–900907, unreported, 1992 WL 14329.

In the instant case, the problematic sewage/drainage system was not readily discoverable by Schulz during her inspection of the premises. In addition, and unlike in *Uihlein,* the Sullivans stated in the purchase contract that to the best of their knowledge, there was no "basement leakage," and it is reasonable that such an assertion could have lessened Schulz's degree of scrutiny of that portion of the home. Moreover, in our response to the first assignments of error, we determined that the actions of the appellants constituted fraud. We conclude, therefore, that the doctrine of *caveat emptor* was inapplicable in the instant case.

■ The Sullivans also claim that any ambiguities in the contract should be construed against the party who prepared the document. After examining the contract we do not find it to be ambiguous. Furthermore, the evidence in the record reveals that the contract was drafted by Carol Miller, a real estate agent acting on behalf of the Sullivans. Thus, any construction of the agreement would necessarily be against the Sullivans.

Based on the foregoing, we hold that the trial court properly overruled the appellants' motions to dismiss the case. The appellants' second assignments of error are not well taken.

■ In their third assignment of error, the Sullivans allege that the trial court erred by admitting into evidence the testimony of real estate agent Carol Miller regarding the fair market value of the property. In support of this assignment, the Sullivans argue that Miller was not an expert in the field of real estate, and that her testimony was not based upon personal knowledge or upon facts previously admitted into evidence at the trial as required by Evid.R. 703. This assignment of error is overruled.

Considering the trial court's disposition of the case, *i.e.,* rescission of the contract to purchase and its order that the Sullivans return to Schulz the sum of money she paid for the house, plus interest, we are not convinced that the trial court relied upon Miller's testimony in rendering its decision or that the Sullivans

were prejudiced by her opinion. The Sullivans' third assignment of error is without merit.

In their fifth assignment of error, the Sullivans allege that the trial court erred by allowing testimony from Thomas Sullivan, during cross-examination, concerning his financial condition. The Sullivans contend that such matters were irrelevant to the claim of fraud advanced by Schulz. This assignment is without merit.

The transcript of the proceedings reveals that Thomas Sullivan, during direct examination, raised and discussed in detail the circumstances that caused him and his family to suffer a severe financial setback. During cross-examination, Sullivan was asked, in essence, whether his financial situation had improved.

A determination as to the admissibility of evidence is generally a matter within the sound discretion of the trial court, *Cincinnati Ins. Co. v. Maytag Co.* (1989), 63 Ohio App.3d 144, 578 N.E.2d 478, and an appellate court will not disturb an evidentiary ruling absent a demonstration that the trial court abused its discretion. *State v. Long* (1978), 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804.

Here, we are not persuaded that the trial court abused its discretion when it allowed the subject testimony into evidence. Schulz merely explored an avenue of inquiry that was initiated by Thomas Sullivan. On that basis, we overrule the Sullivans' fifth assignment of error.

The Sullivans, in their fourth assignment of error, and Dan Sullivan and Panaro Realty, in their third assignment of error, allege that the trial court erred in its determination of the amount of compensation due Schulz. In support of these assignments, the appellants argue (1) that no evidence was offered concerning the actual value of the property, (2) that no evidence was introduced regarding Schulz's downpayment on the residence or the amount of actual interest payments made by her over the period of time she occupied the residence, and (3) that the simple application of ten percent interest on the judgment of $62,500 was inappropriate. This assignment of error is well taken in part.

As we stated, *supra*, the introduction of evidence demonstrating the actual value of the property was not necessary in this case because the trial court applied the equitable principle of rescission in resolving the matter. It is well settled, however, that "he who seeks equity must do equity," *Christman v. Christman* (1960), 171 Ohio St. 152, 12 O.O.2d 172, 168 N.E.2d 153, and that to obtain the equitable relief of rescission of a contract it is necessary that the

plaintiff place the defendant in the *status quo ante*. *Miller v. Bieghler* (1931), 123 Ohio St. 227, 174 N.E. 774.

In the instant case, the remedy fashioned by the trial court was not accompanied or supported by meaningful detail as to whether Schulz benefited by her occupancy of the residence. It appears, at the very least, that the Sullivans were entitled to a credit equalling the fair market rental value of the property during the extended period of time that Schulz lived in the home. Certainly, such a setoff against the amount paid by and ordered returned to Schulz would have been just and would have served to further the restoration of the Sullivans to the position or status they held prior to the sale of the home. In addition, while we cannot say that the trial court was incorrect, *per se*, when it held that Schulz was entitled to ten percent interest on the $62,500 paid for the home, it would have been helpful to the parties and to this court if a basis had been articulated to support its choice of that amount. In rendering our decision, we recognize that courts applying equity are not bound by formula or restrained by any limitation that tends to interfere with or limit their just exercise of discretion. *Keystone Driller Co. v. Gen. Excavator Co.* (1933), 290 U.S. 240, 54 S.Ct. 146, 78 L.Ed. 293. Rather, we seek only to protect the equitable interests of all parties to this litigation.

Accordingly, we affirm that portion of the trial court's judgment which ordered that the contract to purchase the residence at issue be rescinded. We reverse that portion of the judgment that ordered the appellants to repay $62,500 and interest to Schulz, and remand the cause with instructions to consider all the relevant facts and circumstances bearing upon the parties' interests in the recalculation of the appropriate sum of money due Schulz.

*Judgment accordingly.*

KLUSMEIER, P.J., SHANNON and M.B. BETTMAN, JJ., concur.