Appellant, the Cuyahoga County Department of Children and Family Services (CCDCFS), appeals the decision of Judge Peter J. Sikora dismissing its Motion for Permanent Custody of Angel and Yvette Coyne. It contends the Civ.R. 41 (B) (2) dismissal was erroneous as a matter of law and as against the manifest weight of the evidence. We disagree and, for the following reasons, affirm.
On May 11, 1990, CCDCFS filed a complaint with the Cuyahoga County Court of Common Pleas, Juvenile Division, alleging that Yvette Coyne, born 7-3-89, was a neglected and abused child. The complaint alleged that the child had suffered a traumatic brain injury which her parents had been unable to explain and was consistent with child abuse. Additionally, the child had been admitted to the hospital for severe failure to thrive, weighing only seven pounds at the age of seven months and had been born with a heart defect that required surgery and the parents failed to follow up with necessary medical treatment. The child was found to be neglected and temporary custody was granted to CCDCFS on July 19, 1990.
On July 11, 1991, CCDCFS filed a complaint with the court alleging Yvette's sister, Angel, born 7-17-88, to be an abused child. The complaint alleged that Angel's father, Harry Coyne, had severely spanked the child causing multiple bruises on her waist and backside and hand prints on the child's chest and upper abdomen. On August 1, 1991, the parents admitted to an amended complaint and the child was adjudicated abused and neglected and placed in the temporary custody of CCDCFS on August 1, 1991.
On August 6, 1992, the temporary custody of Yvette Coyne expired by operation of law and a new complaint was filed alleging dependency because the child had been in custody of CCDCFS for two years, and the parents had failed to comply with their case plan. On October 9, 1992, Yvette Coyne was again adjudicated dependent and temporary custody was granted to CCDCFS.
On June 1, 1993, and June 28, 1994, CCDCFS was granted long term foster care of Angel Coyne and Yvette Coyne respectively.
On August 26, 1996, after having custody of Angel for five years and Yvette for six years, CCDCFS filed a motion with the court that the long-term foster care of the children be modified to permanent custody.
On June 9, 1997, a trial commenced and hearings, took place over a six-day period ending October 30, 1997. Two issues were to be determined: 1) whether the children could be or should be returned to their parents within a reasonable period of time; and 2) whether granting the permanent custody motion, and thus permanently terminating all parental rights, was in the best interests of the children.
The testimony of seven witnesses was offered: Harry Coyne and Mary Ealy (fka Mary Coyne), the parents; Beatrice Griffin, Angel's therapist; Molly Palko and Ronna Johnson, health care providers; Dr. Steven Neuhaus, a clinical psychologist; and Edward Heindel, the guardian ad litem. It was established that early on CCDCFS had developed a case plan designed and created to educate the parents on the art of child rearing. Specifically, if they wished to obtain custody of their children in the future, they were required to participate in personal counseling, special needs counseling, and parenting classes designed to help them maintain a stable home environment for the benefit of both children, and to help them meet and cope with the special needs of Yvette.
The parents' participation in the case plan over the years has been sporadic at best. Specifically, the special needs training at Health Hill Hospital, a program designed to take place twice a month for a period of four months, was begun by both parents in 1993, but after only two training sessions all other scheduled appointments were missed. After the second session, neither parent contacted the hospital for a period of over three years. In September of 1996, the father and his new wife began the course in earnest, and completed the course over a period of seven months.
The Metro Health parenting plan was also met with little compliance because of the father's incarceration in 1991, and the mother's lack of participation. The mother completed an alternate program in February of 1996, and the father completed the parenting classes in his case plan in 1996. From the onset of CCDCFS custody, the parents have visited with their children sporadically, sometimes consistently, and, at other times, there were no visits for months. By the time of this hearing, however, visitation was on a consistent basis.
At the time of the hearing, both parents had managed to maintain stable housing for a period of some duration. Both testified concerning their continued relationship with their children through visitation, and it was clear that each felt a relationship had been formed. Mr. Coyne stated:
 My goal for my children is to grow up in a suitable environment. A parent needs to be part of their lives. I have a very tight bond with my children, especially Angel. I have a lot to offer them. I have an obligation to my children to bring them up and take care of them and raise them and send them to school and be with them. And I'm in no way trying to justify the mistake I made years ago . . . I know that what I did was wrong, but I'm not the same man I was then.
Dr. Steven Neuhaus, a clinical psychologist with the Cuyahoga County Juvenile Court clinic, conducted an extensive investigation of the children and their situation and provided his expert opinion regarding permanent custody. Although he stated he preferred an award of permanent custody, it appears from the testimony that he was unaware that such an award would sever the parental rights completely and permanently. In contradictory testimony, Dr. Neuhaus stated that it would not be in the best interest or be worth the risk to sever the relationship between Angel and Yvette and their parents because of the possible negative consequences. Beatrice Griffin testified that permanent custody was in Angel's best interests.
In his written report, the guardian ad litem, Mr. Edward Heindel, agreed with the testimony of Dr. Neuhaus, and stated that the children should remain in the custody of the agency, and in foster care, but the relationship the children had developed with their parents should have the opportunity to grow and thrive through continued contact and visitation. Mr. Heindel was cautious in his approach of the parents due to the fact that they were clearly less than suitable parents in the past, but he had seen maturity on both fronts and did not want to see a complete severing of the ties of parenthood.
At the close of CCDCFS's case in chief, and at the request of the guardian ad litem and the attorneys for the parents, the court dismissed the motion for permanent custody.
CCDCFS's first assignment of error states:
 I. THE TRIAL COURT ERRED IN DISMISSING CUYAHOGA DEPARTMENT OF CHILDREN AND FAMILY SERVICES MOTION FOR PERMANENT CUSTODY OF ANGEL AND YVETTE COYNE PURSUANT TO CIVIL RULE 41 (B) (2), INVOLUNTARY DISMISSAL, AS SAID DECISION WAS ERRONEOUS AS A MATTER OF LAW AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
Civ.R. 41 (B) (2) provides in pertinent part:
 After the plaintiff, in an action tried by the court without a jury has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as a trier of facts may then determine them and render judgment against the plaintiff . . .
In considering a Civ.R. 41 (B) (2), a trial court is not required to construe the evidence in favor of the nonmoving party. Levine v. Beckman (1988), 48 Ohio App.3d 24,548 N.E.2d 267. A dismissal, pursuant to Civ.R. 41 (B) (2), will only be set aside if it is "erroneous as a matter of law or against the manifest weight of the evidence." Bank One v. Doughman (1988),59 Ohio App.3d 60, 62-62, 571 N.E.2d 442.
In determining if a child or children should be placed in permanent custody, R.C. 2151.414 controls and provides in pertinent part:
 (B) The court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 (1) The child is not abandoned or orphaned and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents;
* * *
 (C) In making the determinations required by this section or division (A) (4) of section 2151.353
[2151.35.31] of the Revised Code, a court shall not consider the effect the granting of permanent custody to the agency would have upon any parent of the child. A written report of the guardian ad litem of the child shall be submitted to the court prior to or at the time of the hearing held pursuant to division (A) of this section or section 2151.35 of the Revised Code but shall not be submitted under oath.
 If the court grants permanent custody of a child to a movant under this division, the court, upon the request of any party, shall file a written opinion setting forth its findings of fact and conclusions of law in relation to the proceeding. The court shall not deny an agency's motion for permanent custody solely because the agency failed to implement any particular aspect of the child's case plan.
 (D) In determining the best interest of a child at a hearing held pursuant to division (A) of this section or for the purposes of division (A) (4) or (5) of section 2151.353 [2151.35.3] or division (C) of section 2151.415
[2151.41.5] of the Revised Code, the court shall consider all relevant factors, including, but not limited to, the following:
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem,
with due regard for the maturity of the child;
(3) The custodial history of the child;
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 (E). In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A) (4) of section 2151.353 [2151.35.3] of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A) (4) of section 2151.353 [2151.35.3] of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
 (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
* * *
 (3) The parent committed any abuse as described in section 2151.031 [2151.03.1] of the Revised Code against the child, caused the child to suffer any neglect as described in section 2151.03 of the Revised Code, or allowed the child to suffer any neglect as described in section 2151.03 of the Revised Code between the date that the original complaint alleging abuse or neglect was filed and the date of the filing of the motion for permanent custody;
 (4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;
* * *
 (9) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect;
 (10) The parent has committed abuse as described in section 2151.031 [2151.03.1] of the Revised Code against the child or caused or allowed the child to suffer neglect as described in section 2151.03 of the Revised Code, and the court determines that the seriousness, nature, or likelihood of recurrence of the abuse or neglect makes the child's placement with the child's parent a threat to the child's safety;
* * *
(12) Any other factor the court considers relevant.
 (F) The parents of a child for whom the court has issued an order granting permanent custody pursuant to this section, upon the issuance of the order, cease to be parties to the action. This division is not intended to eliminate or restrict any right of the parents to appeal the granting of permanent custody of their child to a movant pursuant to this section.
(Emphasis added).
In the case sub judice, the judge considered the evidence presented, weighed the credibility and veracity of each witness, including the agency's expert Dr. Neuhaus, and determined that it would not be in the best interests of Yvette and Angel to have the ties to their parents permanently severed. The most credible and damaging testimony to the county was its own expert who clearly stated that permanently severing these ties would have potential negative consequences for the children. This statement was supported further by the guardian ad litem, who also stated that custody should remain with the agency, but visiting rights of the parents should be maintained. It is also clear from the evidence that both parents have begun to rehabilitate themselves and the father is clearly making a concerted and meaningful effort to eventually recover custody of these children.
Because of the foregoing, it is clear that the judge did not err in denying the county's motion for permanent custody, and the dismissal, pursuant to Civ.R. 41 (B) (2), was not against the manifest weight of the evidence.
Accordingly, this assignment of error is overruled.
 II. THE TRIAL COURT ERRED IN DISMISSING THE COMPLAINT FOR PERMANENT CUSTODY WHEN THE GUARDIAN AD LITEM (SIC) FAILED TO CONDUCT AN INVESTIGATION.
CCDCFS contends that the guardian ad litem's lack of investigation and hostility to it led to a misrepresented view of the children's best interests. The guardian contends that he did investigate and interview the children and parents, both foster and natural. None of the parties in this action ever objected to him during trial.
The Supreme Court of Ohio has held that "errors which arise during the course of a trial, which are not brought to the attention of the court by objection or otherwise, are waived and may not be raised on appeal." Stores Realty Co. v. Cleveland
(1975), 41 Ohio St.2d 41, 322 N.E.2d 629.
CCDCFS failed to object to the actions and performance of theguardian ad litem at trial, and, as a result, did not preserve this error for appeal. Accordingly, this assignment of error is not well taken.
Judgment affirmed.
It is ordered that appellees recover of appellant their costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Cuyahoga County Common Pleas Court, Juvenile Court Division, to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
DIANE KARPINSKI. J., CONCUR: ______________________________ JAMES M. PORTER, A.J., CONCURS ______________________________ IN JUDGMENT ONLY. ______________________________ _______________ JUDGE ANNE L. KILBANE
N.B. This entry is an announcement of the court's decision. See App.R. 22(B), 22(D) and 26(A); Loc.App.R. 22. This decision will be journalized and will become the judgment and order of the court pursuant to App.R. 22(E), unless a motion for reconsideration with supporting brief, per App.R. 26(A) is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22(E). See, also, S.Ct.Prac.R. II, Section 2(A)(1).