OPINION
Defendant, Thomas LaGrou, appeals from the permanent injunction granted in favor of his former employer, Neff Motivation, Inc. ("NMI").
NMI is an Ohio corporation. Its business is manufacturing and selling sportswear and award products. NMI sells those products primarily to institutional customers such as schools, colleges, clubs, and booster organizations. LaGrou began working for NMI as a salaried sales representative in 1985. He was assigned to a sales territory that included all of Nebraska and parts of Iowa and South Dakota.
NMI provided LaGrou with a customer list and asked him to service those accounts as well as develop more customers for the company in his assigned sales territory. NMI paid LaGrou a salary for the first six years of his employment, and a partial salary for two more years while he cultivated an account base in the territory. NMI also provided him with extensive sales and product training and supervision throughout his employment.
On April 5, 1991, NMI promoted LaGrou to a "draw commission" sales representative. In connection with this promotion, LaGrou and NMI entered into an Employment Agreement. The agreement contained covenants restricting LaGrou's employment activity should his employment with NMI terminate.
On April 20, 2001, LaGrou informed NMI of his intention to resign effective June 1, 2001. On May 3, 2001, NMI terminated LaGrou. Sometime after the termination of his employment with NMI, LaGrou organized his own company, which is based in Nebraska, for purposes of selling merchandise similar to that sold by NMI.
On May 3, 2001, NMI filed an action for declaratory relief in the Common Pleas Court of Darke County. On May 9, 2001, LaGrou filed a complaint for declaratory judgment in the District Court of Douglas County, Nebraska. The Nebraska complaint was served on NMI on May 14, 2001. NMI's complaint in the Darke County action was served on LaGrou on May 17, 2001.
On May 22, 2001, the Darke County court granted NMI's motion for a temporary restraining order. On the same day, LaGrou sought a temporary restraining order against NMI in the Nebraska action. After initially granting LaGrou's motion, the Nebraska court reversed its decision after speaking with the judge hearing the Darke County action.
On June 4, 2001, the Darke County court issued a preliminary injunctionagainst LaGrou and denied LaGrou's motions to dismiss for lack ofjurisdiction and forum non conveniens. The preliminary injunctionprohibited LaGrou from competing with NMI in LaGrou's former salesterritory.
On June 12, 2001, LaGrou petitioned this court for a writ of prohibition, requesting that the preliminary injunction issued by the trial court be stayed and that the trial court be prohibited from exercising jurisdiction in this matter. On July 23, 2001, we denied LaGrou's application for a writ of prohibition.
On August 13, 2001, LaGrou obtained the equivalent of a preliminary injunction in the Nebraska action. The Nebraska injunction purportedly prohibited NMI from enforcing the Ohio preliminary injunction. The Nebraska injunction is not part of this record, though the parties do not dispute its terms.
On August 31, 2001, NMI filed an emergency motion for immediate trial in the Darke County action. LaGrou filed in opposition to this motion on September 19, 2001, but the motion was granted by the trial court the same day. The trial court scheduled a trial on the issue of the permanent injunction for October 3, 2001. The trial court held the trial as scheduled, and issued a judgment entry in favor of NMI on October 5, 2001.
The trial court enjoined LaGrou from competing with NMI in sales of the products listed in NMI's sales catalogues to customers to which LaGrou had sold NMI products since January 1, 2001, and to other customers in the counties in which LaGrou had sold NMI products since that date. The trial court also enjoined LaGrou from disclosing confidential or proprietary information gained during his employment with NMI. The permanent injunction remains in force until May 31, 2003.
LaGrou filed timely notice of appeal. He assigns nine assignments oferror.
 FIRST ASSIGNMENT OF ERROR THE COURT OF COMMON PLEAS FOR DARKE COUNTY ERRED TO THE PREJUDICE OF APPELLANT IN OVERRULING APPELLANT'S MOTION TO DISMISS ON JURISDICTION GROUNDS
 SECOND ASSIGNMENT OF ERROR THE COURT OF COMMON PLEAS FOR DARKE COUNTY ERRED TO THE PREJUDICE OF APPELLANT IN OVERRULING APPELLANT'S MOTION TO DISMISS ON THE GROUNDS OF FORUM NON CONVENIENS
To better facilitate our discussion, we will consider LaGrou's first and second assignments together.
As noted above, NMI filed an action for declaratory relief in DarkeCounty, Ohio, on May 3, 2001, but did not serve LaGrou with the complaintuntil May 17, 2001. In the interim, on May 9, 2001, LaGrou filed acomplaint for declaratory judgment against NMI in Nebraska, which wasserved upon NMI on May 14, 2001, before service was obtained On LaGrou inthe Ohio action. LaGrou argues, under the first and second assignmentsof error, that the trial court erred when it did not dismiss NMI's actionfor lack of jurisdiction or under the doctrine of forum non conveniens.
Whether to entertain a declaratory judgment action is within the sounddiscretion of the trial court, and the trial court's decision will not bereversed absent an abuse of that discretion. Commercial Union Ins. Co.v. Wheeling Pittsburgh Corp. (1995), 106 Ohio App.3d 477, 481. "The term`abuse of discretion' connotes more than an error of law or judgment; itimplies that the court's attitude is unreasonable, arbitrary, orunconscionable." Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
LaGrou does not contest that Ohio has jurisdiction over NMI's action against LaGrou. However, LaGrou argues that the trial court erred in exercising jurisdiction in this matter because service had been perfected first in the Nebraska action, although the Ohio action was filed first.
 "The fact that an action is pending in another state does not constitute a defense to an action between the same parties over the same cause of action in Ohio. * * * An Ohio court's options, in this situation, are to grant a stay pending the resolution of the earlier action outside Ohio, or to maintain the action in this state. * * * In other words, dismissal is not an option at this stage of the proceedings."
Commercial Union Ins. Co., supra, at 486 (quoting Hoppel v. Greater IowaCorp. (1980), 68 Ohio App.2d 209, 210).
 The Darke County court had jurisdiction of the parties and the subjectmatter in dispute. Because it possessed jurisdiction, the trial courtcould not have properly dismissed the Ohio action for lack ofjurisdiction. Further, the trial court acted within its discretion whenit proceeded with NMI's declaratory judgment action rather than stayingthe action in favor of the Nebraska action, because of Ohio's importantinterests in protecting the rights of a corporate citizen.
 Turning to the second assignment of error, unlike the concurrentjurisdiction issue the doctrine of forum non conveniens does permit atrial court to dismiss an action where general jurisdiction exists.Glidden Co. v. HM Holdings, Inc. (1996), 109 Ohio App.3d 721, 724.However, exercise of the power is also committed to the sound discretionof the trial court, which may employ it in the interests of justice andfor the convenience of the parties and witnesses. Chambers v.Merrell-Dow Pharmaceuticals, Inc. (1988), 35 Ohio St.3d 123, paragraphone of the syllabus.
 "In analyzing a motion to dismiss for forum non conveniens, a trialcourt must weigh a number of public and private interests. The weight tobe given each factor depends largely upon the facts of each case."Glidden, supra, at 724-25 (quoting Salabaschew v. TRW, Inc. (1995),100 Ohio App.3d 503, 506).
 Important private interests include access to sources of proof, availability of compulsory process for attendance of unwilling witnesses, location of willing witnesses, and enforceability of a judgment if one is obtained. Public interest factors to be considered include administrative difficulties and delay to other litigants caused by congested court dockets, the imposition of jury duty upon citizens of the jurisdiction, and the appropriateness of litigating a case in a forum familiar with the applicable law.
 Id.
LaGrou's Employment Agreement contains a choice of law clause whichlists Ohio as the forum where a dispute between the parties will belitigated. In addition, NMI is headquartered in Darke County, and hasbeen at all relevant times. The employment agreement was drafted andsigned by NMI in Ohio, and many aspects of the agreement were performedin Ohio. However, LaGrou notes that he signed the agreement inNebraska, and the injunction would be enforced in LaGrou's former salesterritory, which includes Nebraska. The factors which favor Ohio overNebraska as a preferred location for this action are sufficient tosupport the Ohio action, even absent the clause in the parties' contractwhich designates Ohio as the forum for any action for breach. With thatprovision, however, Ohio is clearly the proper forum. LaGrou does notallege that the clause was the product of fraud or overreaching.Therefore, we cannot find that the trial court abused its discretion whenit rejected LaGrou's forum non conveniens argument and denied the motionto dismiss.
The first and second assignments of error are overruled.
 THIRD ASSIGNMENT OF ERROR THE COURT OF COMMON PLEAS FOR DARKE COUNTY MADE REVERSIBLE ERROR IN ENTERING A SCHEDULING ORDER ON SEPTEMBER 19, 2001
 FOURTH ASSIGNMENT OF ERROR THE COURT OF COMMON PLEAS FOR DARKE COUNTY ERRED TO THE PREJUDICE AND DETRIMENT OF APPELLANT IN GRANTING AN "EMERGENCY" TRIAL BASED UPON APPELLEE'S REQUEST TO RACE TO JUDGMENT WHEN THE MATTER HAD BEEN PROPERLY SUBMITTED TO A COURT OF COMPETENT JURISDICTION IN THE STATE OF NEBRASKA
 FIFTH ASSIGNMENT OF ERROR THE COURT OF COMMON PLEAS FOR DARKE COUNTY ERRED TO THE DETRIMENT OF APPELLANT AND DEMONSTRATED BIAS IN SETTING AND CONDUCTING A TRIAL WITHOUT PROVIDING DUE PROCESS OF LAW TO APPELLANT WHICH SUBSTANTIALLY AND UNFAIRLY HARMED APPELLANT'S ABILITY TO CONDUCT TRIAL
 SIXTH ASSIGNMENT OF ERROR THE COURT OF COMMON PLEAS FOR DARKE COUNTY ABUSED ITS DISCRETION AND ERRED IN FAILING TO GRANT APPELLANT'S MOTION TO STAY AND CONTINUE
 The third, fourth, fifth and sixth assignments of error address thesame issue: whether the trial court abused its discretion when it grantedNMI's motion for an expedited trial and proceeded to conduct the trialtwo weeks thereafter.
Courts are vested with discretion to control the course of theirjudicial proceedings, and their decisions regarding such matters will notbe disturbed absent an abuse of that discretion. In re Guardianship ofMauer (1995), 108 Ohio App.3d 354. As noted above, the term "abuse ofdiscretion" implies that the court's attitude is unreasonable, arbitraryor unconscionable. Blakemore, supra.
The trial court had issued a preliminary injunction that enjoined LaGrou from competing with NMI in LaGrou's former sales territory. However, LaGrou sought and obtained a preliminary injunction against NMI in the Nebraska court on August 13, 2001, which purportedly rendered the Ohio trial court's June 4, 2001, preliminary injunction a nullity. In its August 31, 2001, motion for an immediate trial date, NMI stated that it needed an immediate trial date to protect its rights under the employment agreement and to guard against the possibility that the Nebraska court could grant summary judgment in favor of LaGrou before a trial in the Ohio action. On September 19, 2001, the trial court set the trial for October 3, 2001.
LaGrou argues that he was prejudiced by the trial court's agreement to NMI's request for an immediate trial date and its failure to stay or continue the trial until a later date. Essentially, LaGrou claims that he did not have sufficient time to conduct discovery and prepare for trial, and was therefore prejudiced by the trial court's insistence on moving forward with the trial.
However, LaGrou does not point to any specific example of the prejudice he suffered because of the trial court's rapid scheduling of the trial. NMI argues that LaGrou could have discovered any information he needed for trial during the five months between the filing of the complaint and the trial itself. It appears that the trial court was simply construing the language of the contract during the trial, and that lengthy discovery in this case was not as important as resolving the issue of the competing injunctions. Therefore, on this record we cannot say that the trial court abused its discretion when it scheduled and conducted the trial in rapid order, or that LaGrou was prejudiced as a result.
The third, fourth, fifth, and sixth assignments of error are overruled.
 SEVENTH ASSIGNMENT OF ERROR THE COURT OF COMMON PLEAS FOR DARKE COUNTY COMMITTED REVERSIBLE ERROR IN ISSUING A PERMANENT INJUNCTION FOR PROVISIONS OF THE AGREEMENT WITHDRAWN BY APPELLEE AT THE COMMENCEMENT OF TRIAL
LaGrou argues that the permanent injunction issued by the trial court was partially based on provisions of the employment agreement that NMI had withdrawn from the court's consideration.
NMI sought an injunction as a means of enforcing the noncompete clause of its agreement with LaGrou. "An injunction is an extraordinary remedy in equity that is available only where there is no adequate remedy available at law." Brentlinger Enter. v. Curran (2001),141 Ohio App.3d 640, 646 (citing Garono v. State (1988),37 Ohio St.3d 171). "Injunctive relief is not available as a right butmay be granted by a court if it is necessary to prevent a future wrongthat the law cannot." Id.
 Accordingly, an employer who seeks an injunction to enforce a noncompete clause must not only establish the reasonableness of the noncompete clause at issue but must also show that the employer is likely to suffer irreparable harm as a result of the employee's breach of that clause. Levine v. Beckman (1988), 48 Ohio App.3d 24, 27. Further, the decision of whether to grant or deny injunctive relief lies within the sound discretion of the trial court and will not be disturbed absent an abuse of that discretion. Garono. An abuse of discretion connotes more than an error of judgment; it implies a decision that is without a reasonable basis, and one that is clearly wrong. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 Id. (citations omitted).
 Section Three of LaGrou's 1991 Employment Agreement, titled Products,states that the agreement applies "only to those products catalogued bythe Company." The Employment Agreement also contains a number ofrestrictive covenants. Section Twenty-One, Confidential Information,bars LaGrou from sharing any confidential or proprietary informationregarding his employment with NMI with another person.
 Section Twenty-Two, Diversion of Customers, reads as follows:
 The Sales Representative agrees to use all diligence to make and keep the sales, trade, and goodwill of the customers of the Company and during the term of this Agreement and for a period of two (2) years thereafter, the Sales Representative shall not sell merchandise on behalf of any person, firm or organization other than the Company to any customer located within the Territory who, during the term of this agreement, purchased merchandise from or through the Company.
 Section Twenty-Three, Non-Competition, states:
 (a) The Sales Representative agrees that during this Agreement and for a period of two (2) years after this agreement is terminated, whether by the Sales Representative or by the Company, because the Company's only contact with its customers in the Territory may have been through the Sales Representative's personal solicitations, Sales Representative shall not be interested, directly or indirectly, in any form fashion or manner, as partner, officer, director, stockholder, advisor, consultant, employee, salesman or in any form or capacity in any business, work or enterprise, located within the Territory, the nature of which business, work, or enterprise is competitive to the type of business or operation conducted by the Company, or its subsidiaries and associated companies.
 (b) In addition, the Sales Representative agrees not to solicit, interfere with or endeavor to entice away any of the company's employees or independent sales representatives during the term of this Agreement, or for a period of two (2) years immediately following the termination of this Agreement.
 Section 23(a) of the Employment Agreement was withdrawn by NMI prior tothe trial. LaGrou argues that the trial court therefore erroneouslyrelied on it when it shaped the permanent injunction.
 The permanent injunction prohibits LaGrou from "directly or indirectlyengaging in any business which is competitive to Neff Motivation, Inc.for those products listed in sales catalogues published by NeffMotivation, Inc. in 2000 and 2001." The trial court states further thatthis provision applies only to those organizations listed on anattachment, organizations to which LaGrou had sold merchandise sinceJanuary 1, 2000.
 In its judgment entry granting the permanent injunction the trial courtacknowledged that Section 23(a) was withdrawn by NMI. However, while theprovisions of the permanent injunction noted above bear some similarity toSection 23(a), it is apparent that the trial court relied on Section 3 ofthe agreement, which defines the products that are covered by theagreement, and Section 22, which prohibits post-termination sales toNMI's customers. In essence, the trial court limited LaGrou fromcompeting with NMI by selling the same products that it does to its mostrecent customers in the sales territory, not by prohibiting LaGrou fromcompeting with NMI outright. The remaining terms of the Agreement,outside Section 23(a), permit that relief.
 Finally, even if the trial court erroneously relied on Section 23(a)when it formed the permanent injunction, in light of the broad discretionafforded to a trial court imposing an injunction, we could not find errorbecause the provision is reasonable under the circumstances. SeeBrentlinger Enter., supra, at 646.
Therefore, we find that the trial court did not abuse its discretion.The seventh assignment of error is overruled.
 EIGHTH ASSIGNMENT OF ERROR THE COURT OF COMMON PLEAS FOR DARKE COUNTY ERRED TO THE PREJUDICE OF APPELLANT IN ISSUING A PERMANENT INJUNCTION BY CLEAR AND CONVINCING EVIDENCE
 Because a covenant not to compete amounts to a restraint of trade,"such clauses will be enforced only to the extent that the restraintsimposed are reasonably necessary to protect the employer's legitimatebusiness interests." Brentlinger Enter., supra, at 645. Therefore, threeconsiderations guide courts seeking to determine whether apost-termination restraint is reasonable: "if the restraint is no greaterthan is required for the protection of the employer, does not imposeundue hardship on the employee, and is not injurious to the public."Raimonde v. Van Vlerah (1975), 42 Ohio St.2d 21, at paragraph two of thesyllabus. The burden of proof is on the employer to produce clear andconvincing proof as to each element. Brentlinger Enter., supra, at645-46.
A court may consider the following factors in determining whether a noncompete clause is reasonable:
 the clauses' geographic and temporal limits, if any; whether the employee represents the sole customer contact; whether the employee possesses confidential information or trade secrets; whether the clause seeks to restrain ordinary, rather than unfair, competition; whether the clause stifles the pre-existing skills of the employee or only those skills that were developed while working for the employer; the balance of the clause's detriment to employer and employee; whether the clause restricts the employee's sole means of support; and whether the restricted employment is merely incidental to the main employment.
Brentlinger Enter., supra, at 646 (citing Raimonde, supra, at 25).Courts are empowered to modify or amend unreasonable employmentagreements to the extent necessary to protect an employer's legitimateinterests. Raimonde, supra, at 26; see also, Rogers v. Runfola Assoc., Inc. (1991), 57 Ohio St.3d 5, 8. As noted above, in addition toproving that non-competition clauses in an employment agreement arereasonable, the employer must also show that it is likely to sufferirreparable harm as a result of the employee's breach of such clauses.Brentlinger Enter., supra.
The trial court's injunction contained five provisions. First, thetrial court enjoined LaGrou or his agents and employees from "directly orindirectly engaging in any business which is competitive to NeffMotivation, Inc. for those products listed in sales catalogues publishedby Neff Motivation, Inc. in 2000 and 2001." In the second provision, thetrial court limited the scope of that clause to "organizations orentities listed in the attached `Attachment A,'" which was a customerlist. Only those customers to which LaGrou had sold merchandise sinceJanuary 1, 2000, are included. Third, the trial court enjoined LaGroufrom selling NMI products in the counties in which LaGrou had soldmerchandise since January 1, 2000. The court attached maps of LaGrou'ssales territory and marked which counties were covered by theinjunction. Fourth, LaGrou was barred from disclosing any "confidentialor proprietary information" he possessed about NMI. And fifth, theeffective date of the permanent injunction was June 1, 2001, and itremains in force until May 31, 2003.
Viewing the Raimonde factors against the facts of this case, we firstfind that the trial court's injunction is no greater than required toprotect NMI's interests. The trial court cited testimony from the NMIpresident and vice-president, which indicated that the two-yearrestriction was the minimum time that a new salesman would need to builda customer base. The court also noted that LaGrou's sales grew after hehad been in the territory for several years. We similarly find thisevidence persuasive on the length of the restriction.
Next, regarding the scope of the injunction as to the products covered, the trial court noted that, for the sake of clarity, the NMI catalogues are the most efficient way to define which products were covered by the employment agreement. Thus, the court found that it was reasonable to enjoin LaGrou from selling products that NMI also offers for sale. Regarding the geographic scope of the injunction, the court first determined the sales that LaGrou had made since January 1, 2000, and then determined in which counties those sales took place. The court limited the scope of the injunction to those counties, which was approximately half of the total counties in the sales territory. Again, we agree that these restrictions are no greater than necessary to protect NMI's interests.
Regarding the second Raimonde factor, whether the restriction imposesundue hardship on the former employee, the trial court found that whilehe may not sell the same or similar products to customers in the samecounties in which he made sales for NMI since January 1, 2000, LaGrou mayuse his familiarity with these customers to sell other related products.In addition, LaGrou may sell any products to customers outside of therestricted geographic area. This restriction avoids an undue hardship onLaGrou.
Finally, regarding the third Raimonde factor, whether enforcement ofthe restriction would be injurious to the public, the trial court foundthat there are various suppliers of this type of merchandise in thearea. Therefore, the effect on the public should be minimal ornon-existent.
Having found that the trial court fashioned reasonable restrictions from the conditions contained in LaGrou's employment agreement, and that the trial court correctly found that NMI presented clear and convincing evidence on each Raimonde factor, we now must decide whether NMI wouldhave been likely to suffer irreparable harm as a result of the employee'sbreach of those restrictions.
The trial court found that without a two-year period for a replacement salesman to establish the personal relationships with the customers in the sales territory, NMI would not be able to fairly compete with LaGrou's "geographic familiarity, detailed sales histories, and personal relationships with individuals making purchasing decisions." The trial court noted the difference in sales volume between LaGrou and the replacement salesman during the summer of 2001, and testimony regarding lost customers. The trial court found that there was a causal connection between LaGrou's continued employment and actual, irreparable harm to NMI.
The issue here is not whether LaGrou's prospective competition with NMI would result in irreparable harm to NMI; the loser in a competition always suffers harm, and often an irreparable harm. Rather, the question is whether LaGrou's breach of his contract would result in irreparable harm. That analysis affords some basis to protect NMI's interests, the parties having agreed to that, which the competitive model typically does not.
LaGrou had little experience in sales before working with NMI, and it is clear that his success during his sixteen-year career there is owed at least in part to the support provided by NMI, especially during his early years with the company. The knowledge and experience that LaGrou gained while working for NMI would give him a distinct advantage over NMI's replacement salesman, one that otherwise cannot be avoided. Irreparable harm to NMI's interests would result from LaGrou's breach of the covenants contained in the employment agreement.
For all those reasons stated above, we find that the trial court properly tailored its injunction to fit the facts and circumstances of this case, and therefore, the permanent injunction is not overbroad.
The eighth assignment of error is overruled.
 NINTH ASSIGNMENT OF ERROR THE COURT OF COMMON PLEAS FOR DARKE COUNTY ERRED IN ENTERING A "FINAL APPEALABLE" ORDER ON THE PERMANENT INJUNCTION
While it is somewhat unusual to have an appellant arguing that the order it appealed from is not a final appealable order, we find that the trial court complied with Civ.R. 54(B) in determining that there was no just reason to delay final judgment regarding the permanent injunction.
The ninth assignment of error is overruled.
 Conclusion
Having overruled the assignments of error presented, the judgment fromwhich the appeal was taken will be affirmed.
BROGAN, J. and YOUNG, J., concur.